FILED

2010 Mar-29  PM 01:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CARLA MIZE *on behalf of* D.I.M.,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]    **CV-08-BE-2071-S** |
| | ] |
| **SOCIAL SECURITY** | ] |
| **ADMINISTRATION, Commissioner,** | ] |
| | ] |
| **Defendant.** | ] |

**MEMORANDUM OPINION**

**I. Introduction**

On July 18, 2005, Carla Mize, mother of Claimant D.I.M., filed an application on behalf

of her minor son for childhood Supplemental Security Income (SSI) payments.  Ms. Mize alleged

her son's disability commenced on January 1, 1999 as a result of D.I.M.'s asthma and speech

impairment.  The Commissioner denied the claims.  The Claimant filed a timely request for a

hearing before an Administrative Law Judge (ALJ).  The ALJ held a hearing on November 7,

2007.  During the administrative hearing, Claimant's counsel modified D.I.M.'s claims of

disability to include asthma, obstructive sleep apnea, allergic rhinitis, speech/hearing impairment,

and obesity.

In a decision dated August 19, 2008, the ALJ found that the Claimant was not disabled

within the meaning of the Social Security Act, and therefore, was not eligible for SSI payments.

On October 8, 2008, the Appeals Council denied the Claimant's request for review.  The

Claimant has exhausted all administrative remedies in this matter and this court has jurisdiction

1

for judicial review pursuant to 42 U.S.C. § 405(g).  For the reasons stated below, the court will

affirm the decision of the Commissioner.

## II.  Issues Presented

In this appeal, the claimant argues that the Commissioner erred in three ways.  First, the

claimant alleges that the ALJ failed to show good cause why he did not give the opinion of

D.I.M.'s treating sources and his mother considerable weight.  Next, the claimant argues that the

ALJ erred in evaluating the severity of D.I.M.'s asthma.  Third, the claimant argues that the ALJ

failed to fully develop the record by seeking further medical review.

## III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham*

*v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).  "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999.  However, this court does not review the Commissioner's factual determinations *de*

*novo*, but will affirm those factual determinations that are supported by substantial evidence.

"Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the

reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing

court must not only look to those parts of the record that support the decision of the ALJ, but

must also view the record in its entirety and take account of evidence that detracts from the

evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV.  Legal Standard

For a child to qualify for disability benefits and establish his entitlement for a period of

disability, he must be disabled as that term is defined under the Social Security Act and its

Regulations.  The Regulations provide a three-step sequential determinative process for children

rather than the five-step process used for adults. The ALJ must determine whether:

> 1) The child is engaged in substantial gainful activity.
> 2) The child has a medically determinable severe impairment or combination of impairments.
> 3) The impairment meets, or is medically equal to, or is functionally equal to an impairment included in the Listing of Impairments in Appendix 1 of Subpart P of the Regulations.

20 C.F.R. § 416.924(a)-(d).  If the answer to the first question is "no" and to the remaining two is

"yes," then a finding of disability is required.

Under the Regulations, for a child to be found disabled, he must "have a medically

determinable physical or mental impairment or combination of impairments that causes marked

and severe functional limitations, and that can be expected to cause death or that has lasted or can

be expected to last for a continuous period of not less than 12 months." 20 C.F.R 416.906 (2009).

A physical or mental impairment is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.  An impairment or

combination of impairments causes marked and severe functional limitations if it 1) meets or

medically equals in severity the set of criteria for an impairment listed in the Listing of

Impairments (the Listing), or 2) is functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(d).  Thus, to be considered disabling, a child's impairment or combination of impairments must meet, medically equal, or functionally equal a section of the Listing of impairments, 20 C.F.R. § 404, Subpt. P, App. 1.  In the instant case, D.I.M. claims he is disabled because his impairments meet and/or are functionally equal to Listing 103.03 for asthma.

To be functionally equivalent in severity to one or more of the listed impairments, a claimant's impairments must cause the same functional limitations as those described in a listed impairment; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  A "marked" limitation is a limitation that interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities, and is more than moderate. *See* 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation is reserved for the worst limitations and is a limitation that interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities, but does not necessarily mean a total lack or loss of ability to function. *Id.* at § 416.926a(e)(3)(I).

The ALJ should determine the character of a claimant's limitation(s) by considering a claimant's limitation of specific function, broad areas of development or function, episodic impairments, and limitations related to the effects of treatment or medication. 20 C.F.R. § 416.926a(b). The ALJ evaluates children between the ages of 3 and 18 in terms of cognitive and communicative development, motor development, social development, personal development, concentration, persistence, and pace; disability is established if the child has an extreme degree of restriction in one area of functioning or marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(b)(2).

4

The Regulations set out the criteria for functional equivalence to a listing in 20 C.F.R. § 416.926a. That regulation requires consideration of six domains, which are broad areas of functioning intended to capture all of what a child can and cannot do. 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or marked limitations in two of the domains. *Id.* at § 416.926a(d).  On this appeal, Claimant D.I.M. challenges the ALJ's findings regarding two functional domains: moving about and manipulating objects, and health and physical well-being.

When a claimant has multiple impairments they must be considered in combination:

[A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

"The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." *MacGregor*, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor*, 786 F.2d at 1053; *Elam*, 921 F.2d at

5

1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor*, 786 F.2d at 1054; *see also Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) (articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## V.  Facts

Claimant D.I.M. was nine years old at the time of the administrative hearing in November 2007.  He claims that he is disabled because he suffers from asthma, obstructive sleep apnea, obesity, allergies, headaches, and a speech/hearing impairment.  He uses an inhaler, nebulizer, and a continuous positive airway pressure (CPAP) machine.  His medications include Albuterol, Flonase, Ibuprofen, Singular, Pulmicort, Topomax, and Prednisone.  According to Ms. Mize, D.I.M. has limited physical abilities.  As a result of his ailments, D.I.M. misses school frequently.  He has had tubes in his ears and frequent ear infections.  Additionally, D.I.M. has asthma symptoms such as wheezing during the day and night.  Ms. Mize testified at the hearing that D.I.M. visited the emergency room for asthma on three occasions during 2007–February 22, June 25, and September 14.  She testified that on these occasions, she took D.I.M. to the emergency room because the clinic he usually attends was booked.

On June 28, 2004, Dr. Roni Grad, D.I.M.'s pulmonary treating physician, described him as having "moderate persistent asthma" when he postponed his dental procedure because of his asthma status.  However, on August 30, 2004, Dr. Grad noted "that the new treatment medications have made a huge difference" and advised that D.I.M.'s dental work could proceed.  Dr. Grad also noted that D.I.M. was "doing great" on his medications.

On August 5, 2005, D.I.M. had surgery to remove his tonsils and adenoids.  On

December 7, 2005, he participated in a sleep study to rule out a sleep related breathing disorder. The results of the study showed mild obstructive sleep apnea and the doctor recommended that D.I.M. concentrate on weight management.  D.I.M. had ear surgery on December 9, 2005 and again on November 14, 2007.

On March 14, 2006, he went to Children's Hospital emergency room for a breathing problem.  On March 27, 2006, Dr. Lozano, D.I.M.'s pediatrician, saw D.I.M. in the Children's Hospital Pulmonary Clinic and gave him an Albuterol nebulizer treatment.  Dr. Lozano noted that D.I.M. has moderate to severe asthma.  D.I.M. was admitted to Children's Hospital Sleep Disorders Clinic on July 25, 2006.  As a result, Dr. Lozano found that D.I.M. continued to show mild to moderate obstructive sleep apnea.  Records from the Jefferson County Department of Health indicate that D.I.M.'s asthma has been "well-controlled" from August 18, 2006 through November 20, 2007.

D.I.M. visited the emergency room on September 11, 2006 for asthma and cough where he received Prednisolone for his cough and Cipro Otic drops for an ear infection.  On October 26, 2006, D.I.M. visited the Children's Hospital Pulmonary Clinic.  Dr. Lozano noted: "On lung exam, he has expiratory wheezing bilaterally" and "[h]is air exchange is definitely improved after his nebulizer treatments, but an expiratory wheeze could definitely be heard after a second nebulizer treatment."  Dr. Lozano added that D.I.M. " is experiencing an asthma exacerbation and having significant difficulty in his asthma control.  I have started him on a Orapred burst with a long taper over three to four weeks."

D.I.M. visited the emergency room on November 14, 2006 for a rash.  On December 23, 2006, the emergency room physician diagnosed D.I.M. with asthma, sore throat, and cough.  He

was seen in the Children's Hospital Pulmonary Clinic on January 25, 2007.  Ms. Mize reported

to the doctor a history of "coughing and shortness of breath with any type of activity."  Dr.

Lozano prescribed Zithromax for an ear infection.  D.I.M. was seen in the Pulmonary Clinic on

February 13, 2007 when Ms. Mize reported that her son had been taking Orapred.  Dr. Lozano

added Zantac 75 for gastroesophageal reflux.  D.I.M. was seen in the emergency room on

February 22, 2007 for fever, swallowing reluctance, and nasal congestion.

On October 7, 2007, Dr. Lozano sent D.I.M.'s counsel a completed Claimant's Treating

Physician Patient Condition Questionnaire.  In the questionnaire, Dr. Lozano indicated D.I.M.

had a "good" prognosis.  Dr. Lozano noted that  D.I.M.'s asthma is controlled "relatively well"

with medication and that the medication should give D.I.M. good control of all of his symptoms.

Dr. Lozano also reported that D.I.M.'s medication does not place any restrictions on his physical

activities and that D.I.M might have some restrictions only when experiencing an

exacerbation–an increase in the severity of his asthma symptoms.

D.I.M. wears glasses and has uncorrected vision at 20/30 in both eyes with astigmatism.

D.I.M. also has a stuttering problem.  D.I.M. has received special education services for speech

twice per week.  Social Security's Consultative Examiner Dr. Cecil G. Betros, Jr. noted that

D.I.M.'s oral language skills were in the "below average range."   His classroom teacher

indicated that D.I.M. had a slight problem paying attention and staying on task.

First, the ALJ found that D.I.M. had not engaged in substantial gainful activity since the

date Ms. Mize applied for SSI benefits on his behalf.  Next, the ALJ determined that D.I.M. had

the medically determinable severe impairments of asthma, obstructive sleep apnea, allergic

rhinitis, obesity and mild hearing loss in the left ear.  After reviewing all of D.I.M.'s medical

records and the questionnaires completed by his teachers, the ALJ determined that D.I.M. did not

have an impairment or combination of impairments that met or medically equaled any of the

listed impairments found in the Listings.  The ALJ then determined that D.I.M.'s impairments

did not functionally equal an impairment in the Listings.  In making his determinations, the ALJ

stated that he gave controlling weight to the opinions of Drs. Grad and Lozano because their

opinions were consistent with and corroborated by the weight of the objective medical evidence.

Thus, the ALJ concluded that D.I.M. was not disabled at any time through the date of the ALJ's

decision.

## VI.  Discussion

Claimant D.I.M. asserts that the ALJ erred in finding that his asthma does not meet the

asthma Listing requirements of § 103.03(B) or functionally equally any of the Listings.  Listing

103.03(B) requires evidence of asthma attacks, *in spite of prescribed treatment*, that occur at

least once every two months or at least six times a year.  "To 'meet' a Listing, a claimant must

have a diagnosis included in the Listings and must provide medical reports documenting that the

conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v.*

*Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  The Regulations define asthma attacks as

"prolonged symptomatic episodes lasting one or more days and requiring intensive treatment,

such as intravenous bronchodilator or antibiotic administration or prolonged inhalational

bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. pt. 404,

subpt. P, appx. 1, § 3.00(C).  According to D.I.M., the ALJ did not give significant weight to

D.I.M.'s treating physician in finding that D.I.M.'s asthma did not meet or equal the

requirements of the Listings.

**A.  Whether the ALJ failed to show good cause why he did not give the opinion of D.I.M.'s treating sources and his mother considerable weight.**

Contrary to the claimant's contention, the ALJ gave controlling weight to the opinions of D.I.M.'s treating physicians Dr. Lozano and Dr. Roni Grad.  In determining that D.I.M. had less than marked limitations in the domain of health and physical well-being, the ALJ relied on Dr. Grad's treatment notes indicating that "the new medications have made a huge difference" with D.I.M.'s asthma and health.  Dr. Lozano reported that D.I.M.'s asthma was controlled "relatively well" with medication and that the medication gave him good control over his symptoms.  Dr. Lozano also noted D.I.M.'s asthma may cause "some restrictions only when experiencing an exacerbation."  However, the ALJ determined that the *potential* for restrictions was not enough for D.I.M. to have marked limitations in either the domain of health and physical well-being or moving and manipulating objects.  Additionally, medical records from the Jefferson County Department of Health support the doctors' conclusions that D.I.M.'s asthma has been well-controlled by medicine from August 2006 through the date of the administrative hearing.

As to Ms. Mize's testimony, the ALJ acknowledged her testimony that she had taken D.I.M. to the emergency room on three occasions in 2007; however, these three emergency room visits did not total a sufficient number of incidents under the asthma Listing.  Additionally, each incident did not rise to the level of severity the asthma listing requires.  For example, D.I.M. did not receive "intensive treatment" during his emergency room visits as required by the Listings.  Furthermore, contrary to Plaintiff's contention, the ALJ did not discredit Ms. Mize's testimony but rather found that her testimony, along with the other evidence, did not support a finding of disability under the Act.  Accordingly, Claimant's argument that the court should disturb the

ALJ's decision because of his failure to accord substantial weight to Ms. Mize's testimony is without merit.

**B.  Whether the ALJ erred in evaluating the severity of D.I.M.'s asthma.**

The ALJ did not err in finding that D.I.M.'s asthma failed to meet the asthma Listing.  In his brief, Claimant cites eight instances in the record that he classifies as attacks requiring physician intervention under Listing 103.03(B) between March 2006 and February 2007. However, no evidence in the record establishes that the instances identified by D.I.M. rose to the level of severity required under Listing 103.03(B).  The eight physician visits identified by D.I.M. do not qualify as "asthma attacks" as defined under the Listing.  Out of the eight visits physician visits, only four were non-routine doctor's visits spawned by a problem with D.I.M.'s asthma.  Thus, the medical evidence does not show that D.I.M. had asthma attacks at least every two months or six attacks during a twelve-month period; to the contrary, substantial evidence supports the ALJ's finding that D.I.M.'s asthma did not meet the Listing requirements.

Likewise, the ALJ did not err in finding that D.I.M.'s asthma did not functionally equal any of the Listings.  Claimant contends that the ALJ's findings that D.I.M. has no limitation in moving about and manipulating objects, and less than marked limitation in health and well-being are unsubstantiated.  Claimant asserts that Dr. Lozano's note indicating that D.I.M. *may have restrictions on his physical activities when experiencing an exacerbation* contradicts the ALJ's finding of "no limitation" in moving about and manipulating objects.  Plaintiff also contends that because Dr. Lozano found that D.I.M. *continues to have attacks and allergic symptoms despite the medication*, the ALJ's determination that D.I.M. has less than marked limitation in health and well-being is not supported by substantial evidence.

11

Nevertheless, the Claimant's own interpretation of the evidence is not a basis for disturbing the Commissioner's decision if that decision is supported by substantial evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997).  As discussed above, the ALJ gave substantial weight to the opinions of D.I.M.'s treating physicians in determining whether D.I.M.'s functional limitations met the standard for a finding of disability.  Because the ALJ's findings regarding functional equivalency were based on substantial evidence, the court will not re-interpret the evidence as the Claimant urges.

**C.  Whether the ALJ had a duty to fully develop the record by seeking further medical review.**

The ALJ has a basic duty to fully and fairly develop the record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Claimant contends that the ALJ did not fulfill his duty to fully develop the record when he failed to 1) seek a consultative exam that included a function test and 2) have a medical examiner provide testimony at the hearing.  Notwithstanding the ALJ's basic duty to develop D.I.M.'s medical history for at least the twelve months preceding the filing of his application, D.I.M. bore the ultimate burden of producing evidence in support of his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Ultimately, the ALJ determined that the record was sufficient without requiring an additional consultative examination.  In fact, the Claimant's medical records included the results of three pulmonary functioning tests.  The ALJ determined that these tests, along with the other medical evidence, contained sufficient information to render a decision.  As discussed above, the ALJ had ample evidence to make an informed decision.  Thus, the ALJ did not err when he did not supplement the record with an additional test or testimony from a medical examiner.

12

**VII.  Conclusion**

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.  The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 29th day of March, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE